```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
HILT CONSTRUCTION & MANAGEMENT       :
CORPORATION,                         :
                 Plaintiff,          :      OPINION AND ORDER
                                     :
v.                                   :      15 CV 8693 (VB)
                                     :
THE PERMANENT MISSION OF CHAD TO     :
THE UNITED NATIONS IN NEW YORK and   :
CHERIF MAHAMAT ZENE,                 :
                 Defendants.         :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Hilt Construction & Management Corporation ("Hilt Construction") brings this action for breach of contract, quantum meruit, and account stated against The Permanent Mission of Chad to the United Nations in New York (the "Mission") and its Permanent Representative and Head of Mission, Ambassador Cherif Mahamat Zene ("Ambassador Zene").

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5), and 12(b)(6), the Foreign Sovereign Immunities Act, and the Vienna Convention on Diplomatic Relations. (Doc. #19).

For the reasons set forth below, the motion to dismiss is GRANTED WITH PREJUDICE as to Ambassador Zene, and GRANTED WITHOUT PREJUDICE as to the Mission.

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded allegations in the complaint and opposition briefs, and draws all reasonable inferences in plaintiff's favor.

On October 27, 2014, the parties entered into a contract for the renovation of "an 1859 Gothic Revival style landmark structure building in New Rochelle, New York, which would

1

officially be the Ambassador's Residence." (Affidavit of Ajaz Ahmed in support of plaintiff's opposition to the motion to dismiss ("Ahmed Aff.") at ¶ 4).

The original contract price was $2,853,350. Plaintiff alleges defendants requested additional work, for which plaintiff billed an additional $1,009,018. (Ahmed Aff. at ¶ 41). Plaintiff alleges $1,400,460 of the total billed amount remains unpaid.

Plaintiff commenced this action on November 5, 2015. Plaintiff states that "[a]fter filing the action with the Clerk . . . [p]laintiff attempted personal service of the Summons and Complaint on both Defendants pursuant to 28 U.S.C. § 1608(a)(1), based on the working relationship between the parties, directly at the Mission headquarters at 801 Second Avenue, New York, New York." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls. Opp.") at 5). Defendants thereafter moved to dismiss. (Doc. # 19).

## DISCUSSION

I.  Legal Standards

   A.  Subject Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw

2

all reasonable inferences in the plaintiff's favor." Id. But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)) (internal quotation marks omitted).  When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); accord Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction . . . a district court, as it did here, may refer to evidence outside the pleadings.").

   B. Insufficient Service of Process

"Where a defendant moves for dismissal under Rules 12(b)(2), (5), and (6), the Court must first address the preliminary questions of service and personal jurisdiction." Hertzner v. U.S. Postal Serv., 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007) (internal citations omitted). When considering a motion to dismiss pursuant to 12(b)(5) for insufficient service of process, courts must look to matters outside the complaint to determine whether it has jurisdiction. Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).  Plaintiff bears the burden of proving service of process was adequate. Id.

II. Ambassador Zene

   Defendants argue the Court does not have subject matter jurisdiction over Ambassador Zene because he enjoys diplomatic immunity.

   The Court agrees.

The United States is a signatory to the Vienna Convention on Diplomatic Relations ("Vienna Convention"), which accords diplomatic agents diplomatic immunity. See United States v. Khobragade, 15 F. Supp. 3d 383, 385 (S.D.N.Y. 2014).

Congress implemented the Vienna Convention in 1978 in 22 U.S.C. § 254d, which states:

> Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities, shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure.

As a result, "[u]nder 22 U.S.C. § 254d, a district court must dismiss any action or proceeding brought against an individual who is entitled to immunity" under the Vienna Convention. Swarna v. Al-Awadi, 622 F.3d 123, 133 (2d Cir. 2010) (internal quotation omitted) (emphasis added).

The head of a United Nations mission is indisputably a "diplomatic agent." Vienna Convention, 23 U.S.T. 3227, Art. 1(e) ("A 'diplomatic agent' is the head of the mission or a member of the diplomatic staff of the mission.").

It is well-settled that "sitting diplomats are accorded near-absolute immunity in the receiving state to avoid interference with the diplomat's service for his or her government." Swarna v. Al-Awadi, 622 F.3d at 137.

However, under the Vienna Convention, certain exceptions to immunity apply. Specifically, Article 31(1) of the Vienna Convention provides:

> A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:

4

> a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;
>
> b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State;
>
> c) an action relating to any professional or <u>commercial activity</u> exercised by the diplomatic agent in the receiving State <u>outside his official functions</u>.

Vienna Convention, art. 31(1), April 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502 (entered into force in U.S. Dec. 13, 1972) (emphasis added).

Thus, Ambassador Zene enjoys diplomatic immunity unless one of the exceptions in Article 31(1) applies.

Plaintiff argues the exception to immunity stated in Article 31(1)(c) applies because the contract for the renovation of the Ambassador's house qualifies as a "commercial activity" "peripheral to" his official functions. (Opp. at 9).

The Court disagrees.

On its face, Article 31(1)(c) only applies to commercial activity exercised "outside of [the] official functions" of the diplomatic agent.

Here, there can be little doubt Ambassador Zene was acting purely within his official functions when he contracted for the renovation of the Ambassador's official residence. Defendants assert, and plaintiffs do not dispute, that "the Permanent Mission of Chad, <u>through</u> Ambassador Cheriff Mahamat Zene, hired Plaintiff <u>on behalf of the Mission</u> of Chad to renovate a property <u>belonging to the Mission</u>." (Defs' Br. at 13) (emphasis added). This assertion is supported by the underlying documents. The first sentence of the contract states: "The Permanent Mission of the Republic of Chad to the United Nations intends to renovate its

5

Ambassador's residence." (Affirmation of Ryanne Konan in Support of Defs' Motion ("Konan Aff.") at Ex. A, p. 1). Furthermore, correspondence between the parties clearly identifies Ambassador Zene as the "representative" of the Mission. (Id. at Ex. H, n.1).

Because the contract for the renovation of the Ambassador's official residence was undertaken by the Mission through Ambassador Zene as its representative, the Court is satisfied Ambassador Zene was acting within his official functions when he oversaw the project. As a result, the "commercial activity" exception does not apply to Ambassador Zene, and he is immune from this lawsuit. The Court therefore does not have subject matter jurisdiction over the claims against Ambassador Zene.

Since the Court lacks subject matter jurisdiction as to Ambassador Zene, it need not address defendants' alternate arguments with respect to him. Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (if the court "must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined") (internal citation omitted).

Accordingly, plaintiff's claims against Ambassador Zene are dismissed with prejudice.

III.    The Mission

Defendants argue the complaint should be dismissed against the Mission on several grounds: (i) lack of subject matter jurisdiction, (ii) lack of personal jurisdiction, (iii) improper venue, (iv) because the Mission's assets are immune against execution and levy under the Vienna Convention, and (v) for failure to state a claim upon which relief can be granted.

The Court concludes it has subject matter jurisdiction, but lacks personal jurisdiction because the Mission was not properly served in accordance with the applicable law. The remainder of defendants' arguments are unavailing.

6

A.   Subject Matter Jurisdiction

Defendants argue the Court lacks subject matter jurisdiction over the claims against the Mission because it enjoys foreign state immunity.

The Foreign Sovereign Immunities Act ("FSIA") "is the sole basis for obtaining jurisdiction over a foreign state in federal court." Samantar v. Yousuf, 560 U.S. 305, 314 (2010) (internal quotations omitted).  Under the FSIA, "a federal court lacks subject-matter jurisdiction over a claim against a foreign state," unless "a specified exception applies." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).

A country's Mission to the United Nations is a "foreign state" within the meaning of FSIA.  USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 107 (2d Cir. 2012) ("A foreign state's permanent mission to the United Nations is indisputably the 'embodiment' of that state.").

There are several enumerated exceptions to the immunity granted to foreign states by the FSIA.  In particular, here, plaintiff argues the "commercial activity" exception applies.  Under that exception, "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2) (emphasis added).

The parties dispute whether a construction contract for the renovation of a diplomat's residence can be considered a "commercial activity."

The FSIA defines "commercial activity" as:

> [E]ither a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course

>of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d).

Defendants argue a contract to renovate a building does not qualify as "commercial activity" because "[t]he Mission did not perform an action by which a private party engages in trade and traffic or commerce, nor did the Mission acquire any goods from Plaintiff." (Defs' Br. at 15). They appear to draw a distinction between "deliver[ing] construction material and services" and "renovat[ing] the premises," arguing the former would constitute commercial activity, but not the latter. Defendants further argue that "engaging a contractor to renovate the premises of a foreign state in order to further its diplomatic mission is a power peculiar to sovereigns," and is therefore part of the political and governmental "core functions" of the Mission.

The Court disagrees.

"The commercial character of a course of activity or particular transaction is determined by reference to the nature of the activity, not its purpose." Hilaturas Miel, S.L. v. Republic of Iraq, 573 F. Supp. 2d 781, 793 (S.D.N.Y. 2008). "An activity is commercial if it is 'the type of action[] by which a private party engage[s] in trade and traffic or commerce.'" Id. at 793-94 (quoting Republic of Argentina v. Weltover, 504 U.S. 607, 614 (1992)).

Construction contracts are "undeniably commercial." Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to the U.N., 2005 WL 1621342, *3 (S.D.N.Y. July 12, 2005) (internal citations omitted); see also U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co., 199 F.3d 94, 98 (2d Cir. 1999) (noting defendants' commercial construction projects constituted commercial activity). As a result, the Mission is not immune from suit.

Accordingly, the Court has subject matter jurisdiction over the Mission in this case.

B.     Personal Jurisdiction

Defendants argue the Court lacks personal jurisdiction over the Mission because the service of process upon the Mission was defective and, accordingly, the claims against the Mission should be dismissed.

The Court agrees.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2008) (internal quotations omitted).

"A foreign state . . . must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1).

Section 1608(a), part of the FSIA, requires that service on a foreign state must be effected in one of four ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the

> Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.
>
> As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

"Courts have been unequivocal that § 1608(a) mandates strict adherence to its terms, not merely substantial compliance." Lewis & Kennedy, Inc. v. Permanent Mission of the Republic of Botswana to the U.N., 2005 WL 1621342, at *3 (internal quotations omitted) (emphasis added). Moreover, "[w]hether or not [defendants] received actual notice of the suit is irrelevant when strict compliance is required," as it is here. Finamar Inv'rs, Inc. v. Republic of Tadjikistan, 889 F. Supp. 114, 118 (S.D.N.Y. 1995).

Plaintiff argues it has complied with the FSIA because it "attempted personal service of the Summons and Complaint on both Defendants, pursuant to 28 U.S.C. § 1608(a)(1), based on the working relationship between the parties, directly at the Mission headquarters at 801 Second Avenue, New York, New York." (Opp. at 5). However, "[c]ourts require a more definite manifestation of agreement when determining that a special arrangement has been made, such as a contract provision specifying a method of service in the event of suit." Pablo Star Ltd. v. The Welsh Gov't, 2016 WL 1056590, at *4 (S.D.N.Y. March 16, 2016). No such manifestation of agreement is present here.

Turning next to Section 1608(a)(2), the parties agree there is no applicable international convention on service of judicial documents that applies to the parties. As a result, Section 1608(a)(2) is inapplicable.

Thus, plaintiff is required to comply with either Section 1608(a)(3) or, if it is unable to perfect service under that subsection within thirty days, it must comply with Section 1608(a)(4).

10

Plaintiff admits it has not yet complied with either of these methods of service. It states that it has "commenced the groundwork" to perfect service under Section 1608(a)(3), and "has made, and continues to make, diligent effort to serve Defendants properly." (Opp. at 11).

Plaintiff has not strictly complied with the service requirements of the FSIA. As a result, the Court does not currently have personal jurisdiction over the Mission, and the complaint must be dismissed without prejudice. Kirkendall v. Univ. of Conn. Health Ctr., 2000 WL 232071, *1 (2d Cir. 2000) (where service was improper, "the District Court did not have personal jurisdiction over the individual defendants in their individual capacities and properly dismissed the claims against them without prejudice").

    C.    <u>Venue</u>

Defendants argue venue is not proper in the Southern District of New York and therefore the case should be dismissed under Rule 12(b)(3). Venue over foreign states is governed by 28 U.S.C. § 1391, which states in pertinent part: "A civil action against a foreign state as defined in section 1603(a) of this title may be brought . . . in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(f)(1).

Here, the property that is the subject of the action is located in the Southern District of New York, and all or substantially all of the events giving rise to the claim occurred within this District. Thus, there is a clear nexus to the Southern District of New York.

Accordingly, venue is proper in this District.

D.     Immunity of Assets Against Execution

Defendants argue the Court should dismiss the case because the Mission's assets are immune against execution and levy and thus, even if plaintiff succeeds in its lawsuit, it will be unable to enforce a judgment. They cite Article 22 of the Vienna Convention, which states:

1. The premises of the mission shall be inviolable. The agents of the receiving State may not enter them, except with the consent of the head of the mission.

2. The receiving State is under a special duty to take all appropriate steps to protect the premises of the mission against any intrusion or damage and to prevent any disturbance of the peace of the mission or impairment of its dignity.

3. The premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution.

Vienna Convention, art. 22, Apr. 18, 1961, T.I.A.S. No. 7502, 23 U.S.T. 3227.

Although foreign missions and their premises are immune from attachment and execution under the Vienna Convention, the Second Circuit has held that missions are not immune from judgments against them. 767 Third Ave. Assocs. v. Permanent Mission of Zaire to the U.N., 988 F.2d 295, 300 (2d Cir. 1993) (finding a space leased by the Mission of the Republic of Zaire was inviolable, but noting this did not mean plaintiff was left "wholly without a remedy," because the district court could award monetary damages in favor of the plaintiff); see also Foxworth v. Permanent Mission of Republic of Uganda to the U.N., 796 F. Supp. 761, 764 (S.D.N.Y. 1992) ("The [Vienna Convention] do[es] not immunize defendant from being haled into court.").

Accordingly, dismissal on this ground is not warranted.

E.     Failure to State a Claim

Defendants reference Rule 12(b)(6) and state in a section heading that "The Complaint Fails to State a Claim," but they include no arguments relevant to the Rule 12(b)(6) standards,

12

instead reiterating their jurisdictional arguments.  (See Reply at 4-5).  In any event, the Court finds the complaint meets the standards articulated in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  Accordingly, to the extent the Mission seeks dismissal on Rule 12(b)(6) grounds, that motion is denied.

## CONCLUSION

The motion to dismiss is GRANTED WITH PREJUDICE as to defendant Cherif Mahamat Zene.

The motion to dismiss is GRANTED WITHOUT PREJUDICE as to defendant The Permanent Mission of Chad to the United Nations in New York.

The Clerk is instructed to terminate the motion (Doc. #19) and close this case.

Dated: June 14, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge